# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| BENJAMIN A. TERRY, | ) |
| Petitioner, | ) ) ) |
| vs. | ) Case No. 11-0984-CV-W-ODS-P |
| LARRY DENNEY, | ) ) ) |
| Respondent. | ) ) |

**OPINION AND ORDER DENYING WRIT OF HABEAS CORPUS**

Petitioner, a convicted state prisoner currently confined at the Crossroads Correctional Center in Cameron, Missouri, has filed pro se a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2006 conviction and sentence for first degree murder, which was entered in the Circuit Court of Henry County, Missouri. Petitioner's conviction was affirmed on direct appeal (Respondent's Exhibit K), and the denial of his motion for post-conviction relief filed pursuant to Mo. Sup. Ct. R. 29.15 was upheld on appeal thereof (Respondent's Exhibit P). Petitioner raises four (4) grounds for relief. Respondent contends that Grounds 1 and 2 are without merit and that Grounds 3 and 4 are procedurally defaulted and, alternatively, are without merit.

## FACTUAL BACKGROUND

In affirming the motion court's denial of petitioner's 29.15 motion, the Missouri Court of Appeals, Western District, set forth the following facts:

> In July of 2005, Terry was living in a plumbing shop in Clinton, Missouri. At that time, Terry was operating under the belief that Benny Ladd (the "victim") had stolen a stereo from a vehicle parked in front of Terry's property and that the victim had also poured orange juice into the gas tank of Terry's truck and loosened

the lug nuts on a tire of his truck.

On July 4, 2005, the victim was at Carl Morehead's house (which was located near the plumbing shop where Terry was living) installing speakers into a car with the help of Carl Morehead and Roy Vickers. During this time, Terry was at his shop with his cousin James Clason and a friend, Teresa Foster.

Terry went outside and yelled to the victim that the "speakers sound good in your car," and then yelled for the victim to come pick up his trash–the orange juice cup that allegedly linked the victim to the vandalism of Terry's truck. Terry then told the victim that he would "hold the door open for him" to his shop. Terry left the orange juice cup, into which Foster had urinated, outside the shop.

After making these statements, Terry went inside the shop and told Clason to leave the front door open. Apparently the door would not remain open on its own and eventually shut. Terry then retrieved a shotgun and walked toward the door where he eventually placed the gun down.

Moments later, the victim came through Terry's door, at which time Terry picked up the shotgun and shot the victim in the chest.

Terry gave a statement to the police admitting to intentionally shooting the victim. Terry told the police that he was angry with the victim on the day in question when he said to himself "piss on 'em," at which time he enticed the victim to come inside his shop. He also stated that he then shot the victim from fifteen to sixteen feet away while aiming for the victim's heart.

Terry was charged with murder in the first degree, Section 565.020, in Henry County Circuit Court. The case proceeded to a jury trial, during which time both the State and Terry presented evidence regarding their respective theories of the case.

The jury returned a verdict, finding Terry guilty of murder in the first degree. The court sentenced Terry to life in prison without the possibility of probation or parole.

Respondent's Exhibit P, pp. 2-3.

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc), cert. denied, 469 U.S. 842 (1984). It is

petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[1] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## GROUND 1

In Ground 1, petitioner asserts a claim of ineffective assistance of counsel in that counsel failed to investigate and call two witnesses whose testimonies would have supported petitioner's self-defense theory. Doc. No. 1-1, p. 10. Specifically, petitioner argues that Teresa Foster and Jamie Terry would have testified that petitioner had been harassed by the victim, causing petitioner visibly to become frightened and upset. Doc. No. 1-1, p. 13. The Missouri Court of Appeals, Western District, denied Ground One as follows:

> "To be entitled to post-conviction relief for ineffective assistance of counsel, the movant must satisfy a two-prong test.'" *Glaviano v. State*, 298 S.W.3d 112, 117 (Mo. App. W.D. 2009) (quoting *Zink v. State*, 278 S.W.3d 170, 175 (Mo. banc 2009)). "The movant must show that his counsel failed to exercise the level of skill and diligence that a reasonably competent counsel would exercise in a similar situation and that trial counsel's failure prejudiced the defendant." *Id*.
>
> In order to satisfy the performance prong, Terry's burden is to "overcome the presumptions that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." *State v. Simmons*, 955 S.W.2d 729, 746 (Mo. banc 1997). To demonstrate prejudice, Terry's burden is to "show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. "A reasonable probability is a probability sufficient to undermine the

---

[1] In a proceeding instituted by an application for writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

3

confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

"To prevail on a claim of ineffective assistance of counsel for failure to call a witness, a defendant must show that: 1) trial counsel knew or should have known of the existence of the witness, 2) the witness could be located through reasonable investigation, 3) the witness would testify, and 4) the witness's testimony would have produced a viable defense." *Hutchison v. State*, 150 S.W.3d 292, 304 (Mo. banc 2004). "Counsel's decision not to call a witness is presumptively a matter of trial strategy and will not support a claim of ineffective assistance of counsel unless the defendant clearly establishes otherwise." Id.

On appeal, Terry alleges that his trial counsel was ineffective for failing to call to the stand Teresa Foster and Jamie Terry because their testimony "could have helped to establish Mr. Terry's claims of self-defense and defense of premises, by showing that [the victim] had been threatening Mr. Terry and that Mr. Terry had reason to fear [the victim]."

### A. Teresa Foster

At the post-conviction relief hearing, Teresa Foster, a friend of Terry's testified that while she did not personally know the victim, she was aware, through comments from Terry, that Terry and the victim had an extensive history wherein Terry was afraid of the victim. Specifically, Foster testified that Terry had told her that the victim had previously "messed with [Terry's] truck," and that on another occasion when she parked her car outside Terry's business, her car stereo was stolen. She believed, without proof, that the victim was responsible for this theft. Because of these problems with the victim that occurred on a daily basis, Foster testified that Terry was very emotionally distraught, even to the extent of Terry staying at Foster's house on occasion in an attempt to avoid the victim.

Foster also testified that she was present at Terry's business when Terry shot the victim but that she did not actually witness the shooting. On the day in question, Foster stated that she went to Terry's business to visit him. Foster testified that after awhile on that day, she could hear the victim with "about four or five people standing up the street, laughing, joking, whooping and hollering" and that these comments were directed at Terry. Shortly thereafter, Foster testified that she heard the door of the shop open and that she then heard a gunshot.

### B. Jamie Terry

Jamie Terry, Terry's wife, testified that she was also aware that Terry had an extensive history of conflict with the victim prior to the shooting. Her knowledge was based solely on what Terry had stated to her; she had no personal knowledge of these threats or actions by the victim. For example, Jamie testified that Terry

4

believed, but had no proof, that the victim had put orange juice in his gas tank and had loosened the lug nuts on his truck tires. Furthermore, Jamie testified that young men would pull up their vehicles in their driveway at "all hours of the night, hollering" and that they would then "take off and squeal their tires." Because of the extensive nature of these problems and also because Terry feared for his and her family's lives, Jamie testified that he moved out of her home and into his shop in order to avoid conflict with the victim.

In rejecting Terry's claims as it pertains to *both* of these witnesses, the motion court made specific findings and conclusions that these witnesses would not have provided a viable defense for Terry to the charged crime and thus would not have changed the outcome at trial. Specifically, the motion court found that the effect in not calling Foster and Jamie was harmless because their testimony did not prove or disprove any real issue in the case. The court also found that this testimony would have been cumulative to testimony of Terry and several other witnesses, and further concluded the testimony would "not have any effect on the verdict of the jury." After a careful review of the record on appeal, we conclude that the motion court did not clearly err in refusing to grant Terry post-conviction relief in this regard.

Counsel is not ineffective for failing to put on cumulative evidence from other witnesses. *Goodwin v. State*, 191 S.W.3d 20, 38 (Mo. banc 2006). These witnesses' testimonies would have been cumulative and provide no additional facts that would exculpate Terry. *Id.*; *see also Kuhlenberg v. State*, 54 S.W.3d 705, 708 (Mo. App. E.D. 2001) ("[C]ounsel's failure to call Archer was not ineffective assistance of counsel because counsel was able to obtain from the witnesses that were called most of the information movant contends Archer would have added.").

Terry's argument on appeal that "[b]oth witnesses would have provided evidence that would have *supported and expanded* Mr. Terry's claim of self-defense and defense of premises" acknowledges that these witnesses' testimony would have in fact been cumulative testimony at trial. This is not a basis for post-conviction relief. Not only did Terry testify at trial as to the extensive problems he had with the victim and the impact of this conflict on his life, trial counsel also called to the stand two other witnesses that supported and bolstered Terry's testimony. Donnie French, a neighbor of the victim, testified at Terry's trial that the victim harassed Terry and also that the victim carried a weapon. Officer Paul Abbott testified at trial that he had been to Terry's residence to investigate reports of stolen items and a tampered automobile and that Terry told the officer that he had been threatened by the victim.

Moreover, on appeal Terry ignores the fact that his trial counsel articulated a reasonable strategic basis at the post-conviction relief hearing not to call *either* witness at trial. "When defense counsel believes a witness' testimony would not unequivocally support his client's position, it is a matter of trial strategy not to call

5

her, and the failure to call such witness does not constitute ineffective assistance of counsel." *Evans v. State*, 239 S.W.3d 191, 196 (Mo. App. S.D. 2007) (internal quotation marks omitted). As it pertained to Foster, Terry's trial counsel stated that he did not want to call her at trial because her testimony would have called too much attention to the fact that the victim had been stealing from Terry, which would potentially show a motive for Terry to be angry with the victim versus afraid of the victim. In denying Terry's motion for post-conviction relief, the motion court echoed these concerns that Foster's testimony would have highlighted "prior motive and intent by Terry to harm [the victim]" and that this "would have hurt Terry's theory of justification."

While Terry's trial counsel testified at the post-conviction hearing that he did not have a specific recollection as to why he did not call Jamie at trial, he did state that he has a pattern and practice of avoiding calling individuals "who are an interested loved one in some way" to testify, because juries perceive "that they're going to come there and say whatever it is they need to say in order to help get the person off." Furthermore, Terry's trial counsel testified at the hearing that he did not need Jamie to testify because Terry himself took the stand to elicit the self-defense evidence and also because there were other disinterested individuals who testified to support this theory of the case.

Terry has failed to rebut the presumption that his trial counsel's decision not to call these witnesses at trial was reasonable trial strategy.

Point One is denied.

Respondent's Exhibit P, pp. 4-9 (footnote omitted).

In <u>Strickland</u>, the Court held that, in order for petitioner successfully to assert a claim for ineffective assistance of trial counsel, petitioner must demonstrate that his attorney's performance "fell below an objective standard of reasonableness" and that "the deficient performance" actually prejudiced him. <u>Strickland</u> 466 U.S. at 687-88. This Court, moreover, may not grant habeas relief unless the state appellate court's decision "was contrary to, or an unreasonable application of, the standard articulated by the [United States] Supreme Court in <u>Strickland</u>." <u>Owens v. Dormire</u>, 198 F.3d 679, 681 (8th Cir. 1999), <u>cert.</u> <u>denied</u>, 530 U.S. 1265 (2000).

"A court considering a claim of ineffective assistance must apply a 'strong presumption' that

6

Case 4:11-cv-00984-ODS   Document 15   Filed 03/05/12   Page 6 of 12

counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 131 S. Ct. 770, 787 (2011) (quoting Strickland, 466 U.S. at 689). Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. To satisfy the prejudice prong, a petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Strickland, 466 U.S. at 694.

The Missouri Court of Appeals, Western District, found that the testimonies of Foster and Jamie were cumulative to the testimonies of petitioner, French, and Officer Abbott and that trial counsel had a reasonable strategic basis for not calling them as witnesses. Respondent's Exhibit P, pp. 8-9. As a result, petitioner fails to show either that his counsel's performance objectively was unreasonable or that counsel's performance prejudiced him under Strickland. Because the state court's determinations were not based upon "unreasonable determination[s] of the facts in light of the evidence" or misapplications of "clearly established Federal law," 28 U.S.C. § 2254(d)(1) and (2), Ground 1, will be denied.

## GROUND 2

In Ground 2, petitioner asserts a claim of trial error in that "the evidence was insufficient to show that [petitioner] acted deliberately, not in self defense or defense of premises, and not under the influence of sudden passion." Doc. No. 1, p. 23. The Missouri Court of Appeals, Western District, denied Ground One as follows:

> The evidence was clearly sufficient to support each element of first-degree murder. Deliberation for any amount of time is sufficient; the cool reflection upon the act need not be prolonged. *State v. Knese*, 985 S.W.2d 759, 769 (Mo. banc 1999). Proof of deliberation is often offered by the introduction of the surrounding

7

circumstances of the crime. *State v. Ferguson*, 20 S.W.3d 485, 497 (Mo. banc 2000). Terry was mad at Ladd for placing orange juice in his gas tank and stealing his stereo. He yelled that he would leave his "door" open after exchanging acrimonious words. A reasonable juror could have inferred that the door Terry was speaking of was the door to his residence and not the door to his car. After Terry retreated into his home, he immediately retrieved a loaded shotgun. Once Ladd opened the door, Terry shot him, aiming at his heart, without a word exchanged. While this court or the judge at trial may have reached a different conclusion were we the trier of fact, the facts presented are plainly sufficient to show that Terry consciously laid a trap for Ladd and reflected coolly upon the anticipated murder.

Likewise, the State met its burden of proving lack of self-defense. A juror could only find the defendant acted in self-defense if he shows that "'(1) [he] did not provoke the attack nor was he the aggressor, (2) [he] reasonably believed that he was faced with the necessity of defending himself from bodily harm, (3) [he] used no more force than was necessary, and (4) [he] attempted to avoid the confrontation.'" *State v. Miller*, 91 S.W.3d 630, 635 (Mo. App. W.D. 2002) (citation omitted). A reasonable juror could have determined that Terry was the provoker. Terry taunted Ladd by placing a container filled with urine in his yard and challenging Ladd to come retrieve it. His comments could have also reasonably been understood to be a challenge to enter Terry's residence. Furthermore, Ladd was unarmed and had not recently threatened Terry with violence when Terry shot him. The jury was at liberty to disbelieve Terry's statement that he thought Ladd was armed and menacing.

The evidence was also sufficient to find Terry did not act in defense of premises. "The elements necessary to establish defense of premises are: (1) an immediate danger of entry; (2) the entry is being attempted to kill or inflict serious bodily harm on the occupant; and (3) deadly force was necessary to prevent entry." *State v. Dulaney,* 989 S.W.2d 648, 651 (Mo. App. W.D. 1999). As noted earlier, the jury could have reasonably inferred that Terry's statements constituted an invitation or provocation for Ladd to enter the premises. This statement is sufficient evidence for the jury to find that Terry did not act in defense of premises.

Respondent's Exhibit K, pp. 4-5.

A federal court, in reviewing a sufficiency of the evidence claim, must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (constitutional standard for judging sufficiency of the evidence in criminal trials); Weston v. Dormire, 272 F.3d 1109, 1111 (8th Cir. 2001) ("In determining the

8

sufficiency of the evidence in habeas cases under 28 U.S.C. § 2254, we view the evidence in the light most favorable to the prosecution and decide whether any rational jury could have found, beyond a reasonable doubt, all of the elements of the crime."). The fact finder is given latitude "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Jackson, 443 U.S. at 319. The fact finder is given latitude "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319; see also McDaniel v. Brown, 130 S. Ct. 665, 673 (2010).

The evidence in this case is sufficient to support petitioner's convictions under the above standards. The Missouri Court of Appeals, Western District, determined that, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that petitioner deliberated, did not act in self-defense, and did not act in defense of premises. There was ample evidence to support that petitioner provoked or invited the victim onto his property, including petitioner making enticing statements for the victim to retrieve a container of urine placed on a bucket in petitioner's yard. Petitioner has failed to show that the Missouri Court of Appeals' decision "was contrary to, or involved an unreasonable application of, clearly established Federal law" or that it was "based on an unreasonable determination of the facts in light of the evidence presented" at trial. 28 U.S.C. § 2254(d)(1) and (2). Ground 2 will be denied.

## GROUNDS 3 AND 4

In Ground 3, petitioner asserts a claim of trial error in that the trial court prevented him from presenting evidence establishing "an alternative explanation for his shot placement." Doc. No. 1-1, pp. 29-30. Specifically, petitioner contends that he wished to question Officer Abbott about his

9

police training in order to "show the difference of what a lay person, as opposed to a trained person, does in a situation where they are confronted by someone who might be armed," but the trial court barred the testimony as irrelevant. Doc. No. 1-1, p. 31. In Ground 4, petitioner asserts another claim of trial error in that the trial court failed to instruct the jury as to the lesser included offense of manslaughter. Doc. No. 1-1, p. 35.

Respondent argues that petitioner procedurally defaulted Ground 3 by failing to raise the claim on direct appeal and by failing to raise a claim of ineffective assistance of appellate counsel regarding the issue in his amended post-conviction motion. Doc. No. 10, pp. 25-27. Moreover, respondent contends that, although petitioner raised a claim of ineffective assistance of trial counsel in his amended post-conviction motion for failing to request an instruction of manslaughter, petitioner procedurally defaulted Ground 4 by failing to preserve the error at trial and by failing to include the issue on appeal from the denial of his amended post-conviction motion. Doc. No. 10, pp. 31-32. In response, petitioner does not provide a cause for defaulting Ground 3 and states merely that he had a right to challenge every element of the charged offense and was denied that right. Doc. No. 14, p. 4. Similarly, petitioner provides no cause for defaulting Ground 4 and states that the claim "was presented to be preserved for Supreme Court review as this Court would be unable to grant habeas relief regarding this issue pursuant to 2254(d)." Doc. No. 14, p. 4.

"A habeas petitioner is required to pursue all available avenues of relief in the state courts before the federal courts will consider a claim." Sloan v. Delo, 54 F.3d 1371, 1381 (8th Cir. 1995), cert. denied, 516 U.S. 1056 (1996). "If a petitioner fails to exhaust state remedies and the court to which he should have presented his claim would now find it procedurally barred, there is a procedural default." Id. Petitioner admits that he procedurally defaulted Ground 3 by failing to

10

include the claim on direct appeal and defaulted Ground 4 by failing to include the claim on appeal from the denial of his amended post-conviction motion. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997)(recognizing that failure to present claims in the Missouri courts at any stage of direct appeal or post-conviction proceedings is a procedural default), cert. denied, 523 U.S. 1010 (1998). A federal court may not review procedurally defaulted claims "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).

As previously stated, petitioner has failed to argue cause for procedurally defaulting Grounds 3 and 4. If petitioner contends that ineffective assistance of direct appeal or post-conviction appellate counsel caused his state procedural default, he may not do so because claims of ineffective assistance of counsel must have been independently presented in a timely manner to the state courts in order to be used to show the alleged cause for state procedural default. Edwards v. Carpenter, 529 U.S. 446, 451 (2000). Moreover, ineffective assistance of post-conviction counsel or post-conviction appellate counsel cannot constitute cause for petitioner's default. See Clemmons v. Delo, 124 F.3d 944, 947-48 (8th Cir. 1997); see also Christenson v. Ault, 598 F.3d 990, 995-96 (8th Cir. 2010) ("there is no federal constitutional right to the effective assistance of post-conviction counsel") (citation omitted).

Petitioner also has failed to show that a fundamental miscarriage of justice will result if his defaulted claims are not considered. See Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir. 2006) (petitioner must present new evidence that affirmatively demonstrates that he is actually innocent of the crime for which he was convicted in order to fit within the fundamental miscarriage of justice

11

exception), cert. denied, 549 U.S. 1036 (2006). As a result, Grounds 3 and 4 are procedurally defaulted and will be denied.

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

Accordingly, it is **ORDERED** that:

(1) the petition for writ of habeas corpus is denied;

(2) the issuance of a certificate of appealability is denied; and

(3) this case is dismissed with prejudice.

 /s/ Ortrie D. Smith
ORTRIE D. SMITH
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated: March 5, 2012.

12